ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **POPULAR AUTO LLC.**<br><br>Apelado<br><br>v.<br><br>**ESTADO LIBRE ASOCIADO DE PUERTO RICO, SECRETARIO DE JUSTICIA Y SUPERINTENDENTE POLICIA DE PUERTO RICO**<br><br>Apelantes | KLAN202301138 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Ponce**<br><br>Civil Núm.: **PO2023CV01383**<br><br>Sobre: Impugnación de Confiscación |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de febrero de 2024.

Mediante *Recurso de Apelación*, comparece ante nos el Gobierno de Puerto Rico (Estado), representado por la Oficina del Procurador General, y nos solicita que revoquemos la *Sentencia* dictada el 16 de agosto de 2023 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI).[1] Por virtud del dictamen de referencia, el TPI, por la vía sumaria, declaró Ha Lugar a la *Demanda* de Popular Auto, LLC (Popular o Apelada) por notificar la confiscación de un Mercedes Benz, modelo G63 AMG, tablilla ITC 444 (vehículo) fuera de término. En consecuencia, el TPI le ordenó al Estado devolver el vehículo o, en su defecto, pagar el importe de la tasación efectuada más el interés legal de 5.50%.

---

[1] Apéndice del *Recurso de Apelación*, Anejo IX, págs. 69-80. Archivada y notificada en autos el 21 de agosto de 2023.

Por los fundamentos que exponemos a continuación, *revocamos y devolvemos* la *Sentencia* recurrida para que continúen los procedimientos.

I.

El caso de epígrafe se originó el 3 de marzo de 2023, cuando el Estado ocupó el vehículo a raíz de una intervención por la Policía de Puerto Rico (Policía). La Policía intervino con el conductor del vehículo por conducir bajo los efectos de bebidas embriagantes. Durante esta intervención, la Policía ocupó una pistola cargada. El conductor no tenía licencia de armas vigente, por lo que la Policía ocupó el vehículo por haber sido utilizado durante la comisión de los delitos tipificados en los artículos 6.05 y 6.22 de la Ley de Armas de Puerto Rico, Ley Núm. 168-2019 (25 LPRA secs. 466d y 466u).

El 31 de marzo de 2023, el Estado emitió una *Orden de Confiscación* con relación al vehículo.[2] El mismo día, emitió una *Boleta* autorizando que se someta un caso ante un juez magistrado en contra del conductor del vehículo.[3] No obstante, no fue hasta el 13 de abril de 2023 que Popular, dueña del vehículo, fue notificada de la *Orden de Confiscación.*[4] Así las cosas, el 12 de mayo de 2023, Popular instó una *Demanda* ante el TPI solicitando la invalidez de la confiscación.[5]

Luego de varios trámites procesales, el 20 de julio de 2023, Popular presentó una *Moción solicitando sentencia sumaria por notificación tardía.*[6]

Popular alegó que el Estado incumplió con las disposiciones de la Ley Uniforme de Confiscaciones de 2011, Ley Núm. 119-2011, (34 LPRA sec. 1724 *et seq.*) (Ley Núm. 119-2011) al notificar fuera de los treinta (30) días transcurridos luego de ocupar el vehículo. En

---

[2] *Íd.*, Anejo VIII, pág. 39.
[3] *Íd.*, pág. 40.
[4] *Íd.*, Anejo I, págs. 4-6.
[5] *Íd.*, págs. 1-3.
[6] *Íd.*, Anejo V, págs. 17-22.

su *Oposición*, el Estado alegó que tenía noventa (90) días para culminar la investigación con relación a una acción penal, y que luego es que comenzaban a transcurrir los treinta (30) días para notificar.[7] En lo pertinente, el art. 13 de la Ley Núm. 119-2011, *supra*, dispone que:

> Toda confiscación se notificará por correo certificado **dentro de un término jurisdiccional de treinta (30) días, siguientes a la fecha de la ocupación física de los bienes**. La notificación se hará a la dirección conocida del alegado dueño, encargado o persona con derecho o interés en la propiedad, según consta del expediente de la confiscación.
> [...]
> En aquellos casos en los que se **incaute y retenga cualquier propiedad para alguna investigación relacionada con cualquier acción penal**, civil, administrativa o cuando el bien es indispensable para la investigación o como evidencia en el caso, **el término para culminar la investigación y emitir la orden de confiscación no excederá de noventa (90) días. Los treinta (30) días para notificar la confiscación comenzarán a contarse una vez concluya dicha acción y se expida la correspondiente orden de confiscación**. (Énfasis nuestra).

El 16 de agosto de 2023, el TPI determinó Ha Lugar a la *Moción* y ordenó la devolución del vehículo o el pago de su tasación más el interés legal de 5.50%. En primer lugar, el TPI determinó que los siguientes hechos no estaban en controversia:

> 1. Popular Auto es el titular registral del [vehículo].
> 2. El 3 de marzo de 2023 la [Policía] ocupó el [vehículo], el cual está registrado a nombre de Popular Auto, LLC en el Registro de vehículos del Departamento de Transportación y Obras Públicas de Puerto Rico.
> 3. La *Orden de Confiscación* se emitió el 31 de marzo de 2023. De esta se desprende que se ordenó la confiscación "porque [ese] producto, ha sido utilizado o está relacionado con la comisión de los hechos delictivos que se hacen constar en el epígrafe de esta Orden". **No surge aseveración de que el vehículo fue incautado por fines de investigación**.
> 4. El 31 de marzo de 2023 la Fiscal Marimer Álvarez Ortiz suscribió la *Boleta de Autorización para Someter caso ante un Magistrado* en contra de Carlos M. de Jesús Rodríguez por violación a los Artículos 6.05 y 6.22 de la Ley de Armas de Puerto Rico, por hechos alegadamente ocurridos el 3 de marzo de 2023 en Santa Isabel, PR.

---

[7] *Íd.*, Anejo VIII, págs. 26-68.

5. La carta de *notificación de la confiscación* dirigida a la parte demandante tiene fecha del 12 de abril de 2023, pero fue depositada el 13 de abril de 2023, siendo recibida por Popular Auto el 17 de abril de 2023.

6. En la carta de *notificación de la confiscación* se informa que la ocupación obedeció a que el 3 de marzo de 2023 el vehículo fue utilizado en violación a los Artículos 6.05 y 6.22 de la Ley de Amas de Puerto Rico hechos ocurridos en Santa Isabel, Puerto Rico.[8]

El TPI descartó el argumento del Estado sobre una investigación relacionada con el vehículo. Luego de analizar el caso *Reliable Financial v. ELA*, 197 DPR 289 (2017), concluyó que para aplicar el término de noventa (90) días, "es imperativo que se haya iniciado algún tipo de investigación cercana a la incautación; así como que dicha investigación esté relacionada con el motivo inicial para ocupar la propiedad de manera que se acredite la dilación de la retención de la propiedad".[9] Al Estado no presentar prueba para acreditar cumplimiento con los requisitos antes mencionado, el TPI aplicó la norma general de que la notificación debe ser realizada dentro de los treinta (30) días de haberse ocupado el vehículo.

Inconforme, el 19 de diciembre de 2023, el Estado presentó un *Recurso de Apelación* donde señaló el siguiente error:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DARLE PASO A LA MOCIÓN DISPOSITIVA PRESENTADA POR LA PARTE APELADA CUANDO LA PRUEBA DOCUMENTAL DEMOSTRÓ LA NECESIDAD DE RETENER EL VEHÍCULO DE MOTOR PARA UNA INVESTIGACIÓN CRIMINAL PARALELA DE CONFORMIDAD CON EL ARTÍCULO 13 DE LA LEY UNIFORME DE CONFISCACIONES DE 2011 Y AL NO TOMAR EN CUENTA QUE, COMO MÍNIMO, EXISTE CONTROVERSIA DE HECHOS SOBRE SI EL VEHÍCULO FUE OCUPADO PARA FINES INVESTIGATIVOS EN CUMPLIMIENTO CON ESE ARTICULADO.**

Para aclarar las controversias ante nos, debemos dividir los errores señalados en dos. En primer lugar, ¿erró el TPI al no determinar que el Estado presentó prueba documental que demostrara la necesidad de retener el vehículo para una

---

[8] *Íd.*, Anejo IX, pág. 73. (Énfasis nuestro).
[9] *Íd.*, pág. 79.

investigación criminal paralela? En segundo lugar, ¿existe controversia de hechos reales y sustanciales, particularmente sobre si el vehículo fue ocupado para fines investigativos?

Con el beneficio de la comparecencia de las partes, procedemos a discutir el derecho aplicable.

II.

A.

La Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, permite que cualquier parte solicité una moción de sentencia sumaria. "La sentencia sumaria constituye un mecanismo procesal mediante el que se le confiere discreción al tribunal para dictar sentencia sobre la totalidad de una reclamación, o sobre cualquier controversia comprendida en esta, sin la necesidad de celebrar una vista evidenciaría". J. A. Echevarría Vargas, *procedimiento civil puertorriqueño*, 1ra ed. rev., San Juan, 2012, pág. 218. "El principio rector de una sentencia sumaria debe ser el sabio discernimiento pues de ser mal utilizada se podría estar despojando a un litigante de su día en corte". *Íd.*

Para que proceda la sentencia sumaria, no pueden existir controversias en cuanto a los hechos reales y sustanciales, por lo que lo único que debe hacer un tribunal es aplicar el derecho. En ocasión, las controversias de hechos se confunden con controversias de derecho. Es el deber de los tribunales diferenciar entre ambas. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 226 (2015). El Tribunal Supremo ha aclarado que "las determinaciones de hecho establecen qué fue lo que pasó, mientras que en las conclusiones de derecho se determina el significado jurídico de esos hechos conforme a determinada norma legal". *Íd.* El hecho de que exista un hecho en controversia no significa que una sentencia sumaria es improcedente. "Esos hechos, a su vez, deben ser interpretados por el juez para determinar si son esenciales y pertinentes […]". *Íd.*, pág.

227. Un hecho real y sustancial es aquel "que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015).

Cualquier duda sobre la existencia de controversia sobre hechos reales y sustanciales debe resolverse en contra de la parte promovente. *Vera v. Dr. Bravo*, 161 DPR 308, 332-333 (2004). De existir controversia sobre hechos reales y sustanciales, "no podría dictarse [sentencia] y habría que celebrar un juicio para resolver la controversia en torno a los hechos". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho procesal civil*, 6ta ed. rev., San Juan, LexisNexis de Puerto Rico, 2017, pág. 316.

Al revisar sentencias sumarias, los tribunales apelativos deben utilizar los mismos criterios que los tribunales de instancia. *Vera v. Dr. Bravo*, *supra*, pág. 334. Sin embargo, los foros apelativos están limitados de dos maneras:

> [P]rimero, sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación exhibit, deposiciones o affidávit que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. Segundo, el tribunal apelativo **sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia**. *Íd.*, pág. 335. (Énfasis nuestro).

En consecuencia, cuando el foro apelativo determina que existen controversias de hecho reales y sustanciales, lo que procede es la devolución del caso al tribunal de instancia para que se celebre un juicio para adjudicar esos hechos en controversia.

B.

El derecho a la propiedad privada es un derecho de alto interés público y constituye fundamento de nuestro sistema de

gobierno. *Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*, 3 US 420 (1837); *Rivera García v. Registradora*, 189 DPR 628 (2013). Tanto la Constitución de los Estados Unidos como la Constitución de Puerto Rico contienen cláusulas que protegen y consagran el derecho al disfrute de la propiedad. Privar a una persona de su propiedad requiere estricto cumplimiento con las garantías del debido proceso de ley. Cuando el Gobierno priva a un individuo de su propiedad, este viene obligado a darle la justa compensación.

La Quinta Enmienda de la Constitución de los Estados Unidos, Emda. V, Const. EE. UU., LPRA Tomo 1, dispone que ninguna persona será privada de "sus bienes sin el debido procedimiento legal; ni se podrá expropiar una propiedad privada para destinarla a uso público sin la justa compensación". La Decimocuarta Enmienda permite que se ejerza este derecho ante acciones de los estados, disponiendo que "ningún estado privará a persona alguna de su vida, su libertad o su propiedad sin el debido procedimiento legal". *Íd.*, Emda. XIV.

Nuestra Constitución es más abarcadora por lo que el derecho a la propiedad goza de mayores protecciones. La Sección 7, Artículo II de la Constitución de Puerto Rico, Art. II, Sec. 7, Const. ELA [Const. PR], LPRA, Tomo 1, dispone que:

> Se reconoce como **derecho fundamental del ser humano** el derecho a la vida, a la libertad y **al disfrute de la propiedad**. No existirá la pena de muerte. **Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley**, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales. **Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo**. (Énfasis nuestro).

La Sección 9 dispone que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley".

*Íd.*, Sec. 9. Aunque haya mucho en común entre nuestra Constitución y la de los Estados Unidos, es imprescindible destacar que la nuestra consagra el derecho al disfrute de la propiedad como uno **fundamental**.

El derecho al disfrute de la propiedad no es absoluto. Tal derecho está "**sujeto a su función social y a los amplios poderes de razón de estado de la Asamblea Legislativa**, siempre y cuando el ejercicio de dichos poderes legislativos fuese **razonable**". Jorge M. Farinacci Fernós, *La Carta de Derechos*, San Juan, Editorial de la Universidad Interamericana de Puerto Rico, 2021, pág. 124. (Énfasis en el original).

Mediante la Ley Uniforme de Confiscaciones, *supra*, la Asamblea Legislativa ha autorizado al Estado a "ocupar e investirse para sí todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en la comisión de ciertos delitos". *Reliable v. Depto. Justicia y ELA*, 195 DPR 917, 924 (2016). A través de la confiscación, el Estado adquiere "el título de aquellos bienes que se hayan utilizado para fines ilícitos". *Reliable Financial v. ELA*, *supra*, pág. 296. Cabe señalar que los procedimientos de confiscación no dependen del resultado de una acción penal; estos "podrán llevarse a cabo y culminarse antes de que se acuse, se declare culpable o se absuelva al acusado". Ley Núm. 119-2011, *supra*, art. 8.

Como trata de la privación de la propiedad privada de una persona, el proceso de confiscación requiere estricto cumplimiento con el debido proceso de ley. *Coop. Seg. Múlt. et als. v. ELA et al.*, 209 DPR 796, 813 (2022). A estos fines, el Estado tiene la obligación de notificar a las personas señaladas en la ley, entre ellas, al dueño de un vehículo de motor según conste en el Registro de vehículos del Departamento de Transportación y Obras Públicas. Ley Núm. 119-2011, *supra*, art. 13.

El término para notificar varía dependiendo de las circunstancias de la confiscación. La norma general es que el Estado tiene treinta (30) días desde la ocupación de la propiedad para notificar la confiscación. *Íd.* Sin embargo, cuando se retiene cualquier propiedad para una investigación relacionada con cualquier acción penal, "el término para culminar la investigación y emitir la orden de confiscación no excederá de noventa (90) días. **Los treinta (30) días para notificar la confiscación comenzarán a contarse una vez concluya dicha acción y se expida la correspondiente orden de confiscación**". *Íd.* (Énfasis nuestro).

En *Reliable Financial v. ELA, supra,* nuestro Tribunal Supremo tuvo la oportunidad de interpretar el art. 13 de la Ley Núm. 119-2011, particularmente la excepción de investigación en proceso. Determinó que para que el Estado pueda invocar la excepción al término de notificación de treinta (30) días, debe cumplir con dos requisitos. Primero que, "contemporáneamente o cercano a la incautación exista o se inicie algún tipo de investigación de naturaleza civil, penal o administrativa". *Íd.,* pág. 302. Segundo, "que esa investigación esté de alguna manera vinculada a la razón para ocupar la propiedad incautada". *Íd.*

Por las implicaciones constitucionales que conllevan las confiscaciones, los tribunales debemos interpretar las disposiciones atinentes a las confiscaciones de manera restrictiva. *Íd.,* pág. 303. El Estado "únicamente podrá aprovecharse del plazo adicional si cumple con cada una de las exigencias enumeradas en el último postulado del Art. 13 [...]". *Íd.* Por lo tanto, el Estado debe hacer constar cumplimiento con estos requisitos lo más pronto posible. *Íd.,* pág. 305. Idealmente, esto se cumpliría en la orden de confiscación. *Íd.* Si el Estado cumple con la constatación, le corresponde a la parte que impugna la deficiencia en la notificación probar que esta se hizo tardíamente. *Íd.,* pág. 306.

¿Esto conlleva la nulidad automática de la confiscación? Si la parte que impugna la notificación logra demostrar que el Estado incumplió con los requisitos del art. 13 de la Ley Núm. 119-2011, *supra*, el peso de la prueba se invierte.

> Ahora bien, en la ausencia de las comunicaciones mencionadas, **una vez impugnada una notificación por tardía**, si el Estado interesa valerse del periodo de tiempo adicional consignado en la última modalidad del Art. 13 de la Ley Núm. 119-2011 por alegada ocupación para fines investigativos, **le corresponde el peso de probar, mediante prueba fehaciente, la conexión entre el motivo para la ocupación de la propiedad retenida y la investigación correspondiente**. *Reliable Financial v. ELA, supra*, pág. 306. (cita omitida) (Énfasis nuestro).

En resumen, si el Estado no hace constar los fines investigativos de la ocupación, entonces debe demostrarle al tribunal, **en la acción de impugnación de la confiscación**, mediante prueba fehaciente, la conexión entre la ocupación y la investigación. ¿Realmente existe una investigación vinculada a la razón para ocupar la propiedad incautada? Esto es una controversia sobre hechos reales y sustanciales. Sin claridad sobre este asunto, no se puede atender la controversia en derecho.

### III.

En el caso ante esta Curia, el Estado presentó prueba de la *Orden de confiscación* y de la *Boleta* que autorizó la presentación de cargos ante un juez magistrado. Nuestro Tribunal Supremo ha resuelto que el Estado debe detallar en qué consistió la supuesta investigación, cuál fue su propósito y su nexo con el vehículo. Tiene que ser específico y no basarse en meras generalidades. *Reliable Financial v. ELA, supra.* A modo de ejemplo, debe existir prueba en el expediente que alerte sobre la necesidad de realizar algún tipo de inspección ulterior para levantar huellas dactilares, DNA o residuos de sustancias controladas, sangre o pólvora, que fuera pertinente algún examen pericial concerniente al estado o al funcionamiento

de los frenos, gomas u otros componentes del vehículo. *Íd.*, pág. 304-305.

Sin embargo, cuando la parte que impugna la confiscación logra demostrar que el Estado incumplió con el deber de notificación al amparo de la vía excepcional, se invierte el peso de la prueba. Cuando esto ocurre, aún existe controversia sobre si realmente hubo una investigación penal vinculada a la propiedad confiscada. Esto "puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas, supra*, pág. 110.

En el caso de autos, el TPI concluyó que el Estado incumplió con los criterios para beneficiarse de la notificación excepcional. No obstante, el récord no le permitía al TPI concluir que no había controversia sobre este asunto, ello pues la *Boleta* que autorizó la presentación de cargos coloca en controversia si existía el tipo de investigación que causaría que aplicase un término distinto al pretendido por la parte demandante.  Así pues, será luego del correspondiente juicio que el TPI estará en posición de adjudicar si existía una investigación vinculada a los motivos que originaron la ocupación del vehículo. *Reliable Financial v. ELA, supra*, pág. 306. "Es decir, para que el [Estado] pueda usar el fundamento del tercer supuesto del artículo 13 de la Ley de Confiscaciones, debe probar, **en el juicio**, que el motivo inicial para intervenir y retener la propiedad fue relevante a la pesquisa". KLAN 202100542, Sentencia de 17 de diciembre de 2021. (Énfasis nuestro). En consecuencia, no procedía la resolución mediante la vía sumaria.

IV.

Por los fundamentos que preceden, *revocamos* la *Sentencia* de referencia y *devolvemos* el caso al TPI para que continúen los procedimientos de manera compatible con lo aquí expresado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones